FILED
CLERK
4:17 pm, Jan 10, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GEORGINA YEARBY,

                          Plaintiff,

    -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                        Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
17-CV-01042 (JMA)

**APPEARANCES**

    Jeffrey D. Delott
    Law Offices of Jeffrey Delott
    366 North Broadway
    Suite 410
    Jericho, NY 11753
    *Attorney for Plaintiff*

    Dara A. Olds
    United States Attorney's Office, EDNY
    271 Cadman Plaza East
    Brooklyn, NY 11201
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

    Plaintiff Georgina Yearby ("Plaintiff" or "Yearby") seeks review of the final determination by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge, denying Plaintiff disability insurance benefits under the Social Security Act. Now before the Court is Plaintiff's motion for judgment on the pleadings and remand for calculation of benefits and the Commissioner's cross-motion for remand for further administrative proceedings. For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's cross-motion is GRANTED, and the case is REMANDED for proceedings consistent with this opinion.

# I. BACKGROUND

## A. Procedural History

On October 25, 2013, Plaintiff filed for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability as of December 12, 2012 due to a blood clot in her leg. (See Tr. 70, 135–36, 146.[1]) Following denial of her claim, Plaintiff requested, and appeared with her attorney for, an administrative hearing before Administrative Law Judge Alan B. Berkowitz (the "ALJ") on October 16, 2015. (Tr. 29–69.) At the hearing, upon the advice of her attorney, Plaintiff requested an amended onset date of February 15, 2013. (Tr. 32.)

In a decision dated November 24, 2015, the ALJ denied Plaintiff's claim, finding that she was not disabled for purposes of receiving disability insurance benefits under the Social Security Act. (Tr. 15–28.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 10, 2017. (Tr. 1–5.) This appeal followed. (ECF No. 1.)

## B. Factual Background

In light of the Court's decision to remand this case for further proceedings, the Court recounts only the evidence relevant to that determination.

Plaintiff indicated that she left her job as a medical assistant in February 2013 because of pain in her right leg due to a blood clot condition. (Tr. 45–47, 146.) She stated that her condition began when she was at work and felt pain and swelling in her right leg and could not put any pressure on it. (Tr. 46–47.) She went to Mercy Medical Center that same day and was admitted for treatment of a blood clot and pulmonary embolism, prescribed blood thinners, and advised that she would need to remain on blood thinners for the rest of her life. (Tr. 47–48, 53.)

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 28.)

Plaintiff reported that she feels pain daily and it feels like burning, tightness, and a dull ache up and down her legs and ankle. (Tr. 161–62.) She uses a compression stocking prescribed by a doctor and takes medication that helps her condition, but will not cure it—she still has to elevate her legs to relieve the swelling symptoms. (Tr. 52, 58, 148, 160.)

At the administrative hearing, Plaintiff testified that she had clots in her leg, but was "fine" as long as she could keep her legs elevated because her foot and ankle swell when they are not elevated, which develops into a sharp, dull, achy pain. (Tr. 38, 42.) She further discussed an attempt to do some part-time janitorial work in 2014, which consisted of dusting furniture for four hours a day, one or two days a week. (Tr. 39–44.) She explained she could not work longer hours because of her condition, and after working four hours, her ankle would be swollen, and she would need to rest and elevate it. (Tr. 41–44.) She left the position after a few months. (Tr. 39.)

Plaintiff lives with her sister who also testified at the administrative hearing. (Tr. 37, 61–62.) She stated that she usually sees Plaintiff lying down with both legs elevated. (Tr. 61.) She explained that while Plaintiff "might wash dishes," she needs to sit down and elevate her leg after a few minutes, and "can't really do much." (Tr. 62.)

The only medical records in the administrative record are from Plaintiff's hematologist, Dr. Mohammed D. Ali.[2] (Tr. 205–220.) He saw Plaintiff for treatment of right leg deep vein thrombosis (DVT) due to Protein S deficiency approximately once a month from December 2012 through July 2013, at which time he started seeing her every two to three months. (Tr. 218–19.) There was a lapse in Plaintiff's visits to Dr. Ali beginning in mid-2014 when Plaintiff reported that she did not have health insurance. (Tr. 52, 218–19.) Dr. Ali submitted a treating source statement dated November 4, 2013 opining on Plaintiff's condition and limitations. (Tr. 212–14.) He

---

[2] This includes a laboratory test report from Nassau University Medical Center. (Tr. 216.)

3

completed an additional functional assessment and treating source statement on December 19, 2013. (Tr. 206–10.) Finally, he provided a letter dated October 14, 2015 in which he advised that Plaintiff was unable to work due to clots in her leg caused by Protein S deficiency, and needed to take anti-coagulants, wear compression stockings, and elevate her legs. (Tr. 217.)

The ALJ requested that Plaintiff undergo a consultative examination ("CE"), but Plaintiff's attorney requested that the CE be performed by Dr. Ali.[3] (See Tr. 19, 173–74.) Accordingly, none was performed. (Tr. 19.) In addition, both during and after the administrative hearing, Plaintiff's attorney informed the ALJ that he was still trying to obtain Plaintiff's additional medical records, specifically records from Plaintiff's hospital visit. (Tr. 32–33, 69, 193.) These records were not obtained before the ALJ issued his decision denying Plaintiff disability benefits. (See Tr. 15–25.) Thus, the only medical evidence the ALJ considered were the treatment records and opinions from Dr. Ali. (See Id.)

## C. The Commissioner's Decision

The ALJ applied the five-step process required by the SSA's regulations, described below, and denied Plaintiff's application for benefits. (Id.) First, he determined that Plaintiff met the first two steps—she has not worked since February 15, 2013 and has a severe impairment of Deep Vein Thrombosis Status-Post Thrombotic Syndrome. (Tr. 21.) However, he found that she does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. (Id.)

Turning to Plaintiff's residual functioning capacity ("RFC"), the ALJ reviewed the limited treatment records of Dr. Ali, which he called "unremarkable" and noted that Dr. Ali's only listed

---

[3] The ALJ decision implies that Plaintiff refused to attend a scheduled CE. (Tr. 19.) In the request for review by the Appeals Council, Plaintiff's attorney stated that Plaintiff did not refuse to attend a CE and merely wanted the CE to be performed by her treating physician, Dr. Ali. (Tr. 7.)

restrictions were "no smoking and do not become pregnant." (Tr. 22.) He then determined that Dr. Ali's opinions identifying significant limitations in Plaintiff's ability to sit and stand/walk, as well as her need to elevate her legs for two hours a day, six times a day, were inconsistent with or not supported by the limited treatment record. (Tr. 23.) He stated that Dr. Ali's opinion appeared conclusory and was not supported by any other evidence. (Id.) After summarizing Plaintiff's testimony, the ALJ determined that Plaintiff has an RFC to perform sedentary work that includes the ability to sit six hours and to stand/walk two hours in an eight-hour workday with normal breaks and can lift/carry ten pounds occasionally. (Tr. 21–23.) The RFC also includes that Plaintiff can occasionally climb, stoop, kneel, crouch, and crawl; must avoid hazards such as unprotected heights and dangerous machinery or moving mechanical parts; and may have no more than occasional exposure to fumes and other respiratory irritants. (Id.)

Based on this RFC, the ALJ found that Plaintiff cannot perform her past relevant work as a Medical Assistant. (Tr. 23–24.) Finally, relying on the testimony of the Vocational Expert, Christina Boardman, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as Order Clerk, Credit Card Clerk, or Cashier Clerk. (Tr. 24–25, 64–68.) He therefore concluded that Plaintiff was not disabled and denied her claim for disability insurance benefits. (Tr. 25.)

Plaintiff timely requested that the Appeals Council review the ALJ's decision. (Tr. 6–14.) As part of this request, Plaintiff noted that she had "advised the ALJ that she had been trying to obtain hospital records that formed the basis for the onset of her disability," and that the ALJ had improperly failed to request said records. (Tr. 6.) Plaintiff contends that she electronically submitted the hospital records from Mercy Medical Center to the Appeals Council the day she received them, February 13, 2016. (Pl.'s Mem. at 4.) However, it appears the Appeals Council did not consider these records in its February 10, 2017 decision denying Plaintiff's request for

review. (Tr. 1–5.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Social Security Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). As part of the fourth step, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing

6

Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).

B. **Scope of Review**

In reviewing a denial of disability benefits by the SSA, it is not the function of the district court to review the record *de novo*, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)).

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings may be made pursuant to the fourth sentence of 42 U.S.C. § 405(g) in cases where the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.2d 72, 82–83 (2d Cir. 1999). Accordingly, when an ALJ overlooks an important piece of evidence, remand may be appropriate to ensure the ALJ properly considers such evidence.

See Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968) (directing remand to allow the Secretary to consider a major piece of evidence ignored by the hearing examiner); see also 42 U.S.C. § 405(g) (permitting the court to order the Commissioner to review additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").

## C. Analysis

As discussed, neither the ALJ, nor the Appeals Council, considered Plaintiff's medical records from Mercy Medical Center in denying Plaintiff's application for disability benefits. The parties agree that, at the very least, the case should be remanded for further proceedings to assess this medical evidence.[4] (Pl.'s Mem. 2–6; Def.'s Mem. 12–13.)

The Commissioner also contends that remand for further proceedings is warranted to assess the extent of Plaintiff's impairment. (Def.'s Mem. 11–12.) Plaintiff argues that notwithstanding the hospital records, the case should be remanded solely to calculate benefits because (1) the opinion of Dr. Ali, a treating physician, is entitled to controlling weight; (2) the ALJ's RFC determination is not supported by substantial evidence; (3) the ALJ's credibility finding is not supported by substantial evidence; and (4) the ALJ's determination at step five is not supported by substantial evidence. (Pl.'s Br. 6–25.)

However, the record as it stands does not provide such persuasive evidence of Plaintiff's total disability that further administrative proceedings are pointless. See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000) (directing remand for further proceedings where the record was not sufficiently complete or persuasive with respect to the Plaintiff's disability); Rosa, 168 F.3d at 82–

---

[4] Plaintiff's attempt to backtrack her position in her reply papers is futile. She squarely argued in her opening brief that the hospital records were new and material because, consistent with case law, "they are relevant to the onset of her disability, and are probative of her diagnosis." (Pl.'s Mem. 4–5.) To then claim that they are cumulative because Plaintiff briefly testified about her hospital stay during the hearing is not persuasive. (See Pl.'s Reply Mem. 5–6.)

8

83 (remanding to obtain complete medical records). And, "it is the function of the agency, not reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses." Reynolds v. Colvin, 570 Fed. App'x 45, 49 (2d Cir. 2014) (summary order) (internal citations omitted); see also Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). Accordingly, the Court remands this case for further administrative proceedings so that the Commissioner may take corrective action in accordance with proper application of her rulings and regulations.

First, the Commissioner failed to develop a complete medical history before finding that Plaintiff is not disabled. See 20 C.F.R. § 404.1512(d); Rosa, 168 F.3d 72, 82–83. At the hearing on October 16, 2015, Plaintiff testified about her hospitalization at Mercy Medical Center, but her attorney indicated that they had not yet obtained the medical records. (Tr. 32–33, 47.) The ALJ left the record open for three weeks to allow Plaintiff to obtain any additional medical records, and stated that if Plaintiff had trouble obtaining records, his office would provide assistance. (Tr. 33, 69.) However, when Plaintiff's attorney informed the ALJ after the hearing that he had not yet been able to obtain the hospital records, the ALJ did not respond or make any effort to obtain the records.[5] (Tr. 193.) The ALJ instead issued his decision without considering the additional medical evidence that may well have influenced his decision. (Tr. 15–25.) This constitutes legal error and remand for further administrative proceedings is warranted to permit the ALJ to review the hospital records. Rosa, 168 F.3d 72, 82–83.

In addition, remand for further administrative proceedings is appropriate to permit the ALJ to properly assess the extent of Plaintiff's impairment. The ALJ's RFC did not include any limitation to allow Plaintiff to elevate her leg for any period of time and he did not state sufficient

---

[5] Notably, Plaintiff's attorney did not specifically ask the ALJ to assist in obtaining the hospital records.

reasons why no such limitation is necessary. (Tr. 21–23.) The record includes significant evidence from Dr. Ali, Plaintiff herself, and Plaintiff's sister that Plaintiff needs to elevate her leg to alleviate her symptoms. (See Tr. 37–48, 54–55, 58–62, 205-220.) The ALJ thus erred by fully discounting the medical evidence and making an adverse credibility determination without proper explanation. While this combined evidence suggests that Plaintiff's RFC should include some limitation to permit her to elevate her leg, the Court does not need to reach this issue because the case is being remanded to consider additional evidence, which could potentially impact the RFC analysis.[6] Accordingly, upon remand, the Commissioner must consider whether, and to what extent, Plaintiff needs to elevate her leg as part of the step four RFC determination.

However, contrary to Plaintiff's contention, the ALJ did not commit legal error by not recontacting Dr. Ali about his records. The cases cited by Plaintiff to support her argument that the ALJ must recontact the treating physician where he determines the physician's opinion is inconsistent or lacks support rely on prior versions of 20 C.F.R. § 404.1512. (See Pl.'s Mem. 14–15 (citing cases with claims filed prior to March 2012).) The version in effect at the time Plaintiff filed her application for disability insurance benefits on October 25, 2013 removed the requirement for ALJs to recontact a treating physician under certain circumstances. See How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651-01 (Feb. 23, 2012); 20 C.F.R. § 404.1512(d) (effective March 26, 2012 to June 11, 2014).[7]

---

[6] As Dr. Ali is Plaintiff's treating physician, when considering the evidence on remand, should the ALJ ultimately decide not to grant "controlling weight" to Dr. Ali's opinion, the ALJ must provide "good reasons" in support of the determination of the weight given to said opinion. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c) (listing the six factors the ALJ must consider when rejecting a treating physician's opinion).

[7] While the ALJ is not *required* to recontact a treating physician, he is certainly permitted to do so as part of his duty to fully develop the record. See 20 C.F.R. §§ 404.1512(d), 404.1520b(c). Here, particularly given the limited medical record, when considering the full record on remand, should the ALJ still find Dr. Ali's opinion inconsistent or inadequate, the Court encourages him to recontact Dr. Ali to help resolve any such issues.

Similarly, pursuant to the regulations in effect as of October 25, 2013, the ALJ did not need to recontact Dr. Ali to clarify or elaborate on his findings or conclusions before requesting that the plaintiff attend a consultative examination ("CE"). See 20 C.F.R. §§ 404.1512(d)–(e) (effective March 26, 2012 to June 11, 2014), 404.1520b(c) (effective March 26, 2012 to March 26, 2017). Again, the cases cited by Plaintiff are governed by the prior versions of the regulations. (See Pl.'s Reply Mem. 6–7 (citing cases with claims filed prior to March 2012).)

Plaintiff's additional argument that the ALJ was required to let Dr. Ali perform the CE also fails. (Id.) The regulations merely state that when, in the Commissioner's judgment, a claimant's treating source is "qualified, equipped, and willing to perform the additional examination . . . [the] treating source will be the *preferred source* to do the purchased examination." 20 C.F.R. § 404.1519h. Particularly given that Dr. Ali's responses to the questions in the treating source statements are, in places, incomplete and vague, it was reasonable for the ALJ to request an independent CE.[8] Accordingly, upon remand, should the Commissioner request that Plaintiff attend a CE by an independent examiner, it would be prudent for Plaintiff to comply, as refusing to attend if it is not conducted by her treating physician is not a "good reason" under the regulations. See 20 C.F.R. § 404.1518.

Finally, the Court notes that if the ALJ revises Plaintiff's RFC, he will likely need to obtain further testimony from a vocational expert to meet the Commissioner's step-five burden that jobs exist that Plaintiff can perform.

---

[8] Dr. Ali simply responded "right leg" to a several questions about the nature, severity, and duration of plaintiff's pain, and the treatment he performed. (Tr. 208.) Moreover, in response to questions about testing and Plaintiff's need to rest, Dr. Ali merely responded, "Yes." (Id.)

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings, GRANTS Commissioner's motion for judgment on the pleadings, and REMANDS the case for further proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: January 10, 2019
Central Islip, New York

                 /s/ JMA
              JOAN M. AZRACK
              UNITED STATES DISTRICT JUDGE